CHRISTINE RISTUCCIA, )
individually and d/b/a SAY IT )
RIGHT and THE ENTIRE WORLD OF )
R, )
)
    Plaintiff, )
) CASE NO. CV406-236
v. )
)
SUPER DUPER, INC., )
)
    Defendant. )
)

## ORDER

Before the Court is Defendant Super Duper, Inc.'s Motion for Summary Judgment. (Doc. 29.) This copyright infringement action involves a set of playing cards designed to assist children in overcoming speech impediments. Plaintiff alleges that Defendant published a compact version of her original product, infringing her copyright and undercutting her price by seventy-five percent. Defendant denies infringement and asks the Court to grant summary judgment on all claims. For the following reasons, the Motion for Summary Judgment is **GRANTED**.

### BACKGROUND

Plaintiff Christine Ristuccia is a speech-language pathologist and the owner of Say It Right, a proprietorship which she created with her husband in 1999 on Tybee Island,

Georgia. Between 1999 and 2000, Plaintiff developed the <u>Entire World of R 21 Deck Playing Card System</u> ("EWR"), for which she possesses a copyright registered on March 1, 2001.

The EWR decks consist of 420 individual cards. Each card shows a word and an original artistic representation of the word. The 420 cards are arranged into 21 decks. Each deck represents one of the 21 R allophones.[1] Each deck contains 20 examples of the subject R allophone, all of which are organized in a "phonetically consistent" manner. The EWR decks sell for more than $200.

Defendant Super Duper, Inc. is an educational materials company started in 1986 by Sharon Webber, a speech-language pathologist, and her husband, Thomas Webber. Defendant has created at least 925 proprietary items, including reproducible workbooks, card decks, games, motivators, rewards, tests, equipment, and supplies. Defendant published its first "reproducible R" articulation workbook, the <u>Say and Do R Worksheets</u>, in 1988. Among other things, this workbook

---

[1] An "allophone" is defined as "one of two or more variants of the same phoneme." <u>Merriam-Webster's Collegiate Dictionary</u> 31 (10th ed. 1998). A "phoneme," in turn, is defined as "any of the abstract units of the phonetic system of a language that correspond to a set of similar speech sounds (as the velar \k\ of <u>cool</u> and the palatal \k\ of <u>keel</u>) which are perceived to be a single distinctive sound in the language." <u>Id.</u> at 873.

contained reproducible R picture-word combinations.[2] In 1992, Defendant published its first full-color R articulation card deck, the <u>Webber R Articulation Cards</u>. These cards have illustrated pictures corresponding to the R words and are arranged by the positioning of the R in each word. In November, 2000, Defendant published its <u>Awesome Artic R Worksheets</u> (<u>Awesome R Book</u>), which contained reproducible picture cards, activity sheets, and word lists arranged by prevocalic and vocalic R sounds.

In November 2000, Plaintiff and the Webbers attended the American Speech Language Hearing Convention in Washington, D.C. The Webbers exhibited and sold their <u>Awesome R Book</u>, and Plaintiff exhibited three decks from her 21-deck EWR program. Plaintiff approached Thomas Webber to inquire whether Super Duper would be interested in a licensing agreement to publish and sell her EWR decks. Sharon Webber also spoke to Plaintiff about Plaintiff's cards.

Following the trade show, the parties exchanged emails in which they discussed the possibility of Defendant either licensing or purchasing all rights to the EWR decks. Sharon Webber also spoke to Plaintiff in person at a March, 2001 trade show in New York. However, no agreement was reached.

---

[2] Plaintiff later included at least 127 of these words and/or pictures in her EWR decks.

In the period between 2001 and 2004, both parties published additional R-related products, as well as other articulation and language products.

In July 2004, Defendant published the <u>Webber Vocalic R Photo Cards</u> (WVR), which is a set of five decks: a pre-vocalic R deck and four vocalic R decks.[3] Each deck contains twenty-eight pairs of words arranged according to the position of the R sound. The WVR system has 140 pairs of R photo cards. The set originally sold for $39.95, and Defendant later increased the price to $49.95.

Plaintiff filed suit against Defendant on September 26, 2006, claiming copyright infringement, false advertising, and unfair competition, on the basis of Defendant's creation and marketing of its WVR decks. On August 16, 2007, Defendant filed the instant Motion for Summary Judgment.

## ANALYSIS

### I. <u>Summary Judgment Standard</u>

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

---

[3] A "prevocalic R" word is one in which the R appears before the vowel (e.g. "rain"). A "vocalic R" word is one in which the R is associated with or connected to the vowel. The particular sound – for example, the "AR" sound, can occur in the initial, medial or terminal position of a word (e.g. "artist," "alarm," and "star," respectively).

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (citing Fed. R. Civ. P. 56 advisory committee notes). Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained,

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that

5

there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-588. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

## II. Copyright Claim

Although Plaintiff's original filings implied that her copyright claim was based upon similarities between individual cards in her decks and individual cards in Defendant's decks, she later clarified that it was the "selection and arrangement" of Defendant's compiled deck that constituted the infringement.[4] She argues that Defendant infringed her decks

---

[4] In response to Defendant's Statement of Material Fact #20, which lists differences between Super Duper's Vocalic R Photo

6

by (1) copying her selection of R allophones and/or words and images,[5] and (2) arranging its Vocalic R Cards decks in a phonetically consistent manner. She claims that her arrangement of the cards in her decks was "original" and protected by copyright. In its Motion for Summary Judgment, Defendant argues that Plaintiff has failed to establish infringement of her selection and arrangement.[6]

To establish copyright infringement, a claimant must establish two elements: ownership of a valid copyright, and the copying of constituent elements of the work that are

---

Cards and Plaintiff's Exciting World of R cards, Plaintiff stated as follows: "Plaintiff's claim of infringement is for the overall selection and arrangement, because of Defendant's first time ever use of 20 or 21 allophones and phonetic consistency neither of which they understood or ever used before." (Pl.'s Enumerated Resp. to Def.'s Statement of Material Facts at 9.) Plaintiff also stated that "[I]t is not the words being infringed, it is the selection and arrangement." (Id. at 10.) Finally, Plaintiff's Supplemental Brief makes clear that her claim is for infringement of her selection and arrangement.
[5] Although Plaintiff's argument is somewhat difficult to decipher, it appears that Plaintiff takes issue not only with the selection of sounds (the allophones) but also with the words and/or images selected to illustrate them. As explained below, summary judgment is appropriate on both possible claims.
[6] Defendant argues that Plaintiff waived any claim for infringement of a "selection and arrangement," relying upon Plaintiff's Response to Defendant's Interrogatory No. 12. In that response, Plaintiff stated that eighty-three individual cards were infringed. For purposes of this Order, the Court assumes, without deciding, that this claim was not waived, as Defendant argues. The Court holds that summary judgment is nonetheless appropriate.

original. Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991). In this case, Defendant does not dispute that Plaintiff held a valid copyright to the work she claims was copied. However, a certificate of copyright registration does not mean that the entire work is copyrightable; rather, it means only that the work contains some copyrightable subject matter. Gulfstream Aerospace Corp. v. Camp Sys. Int'l, Inc., 428 F. Supp. 2d 1369, 1374-75 (S.D. Ga. 2006)(J. Edenfield). "[A] copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea – not the idea itself." Mazer v. Stein, 347 U.S. 201, 217, 74 S. Ct. 460, 98 L. Ed. 630 (1954). Copyright law is designed to "permit[] free communication of facts while still protecting an author's expression." Eldred v. Ashcroft, 537 U.S. 186, 190, 123 S. Ct. 769, 154 L. Ed. 2d 683 (2003).

Copying of protected materials can be shown through either direct or indirect evidence. To establish copying through indirect evidence, "[t]he plaintiff is first required to show that the defendant had access to the plaintiff's work; second, the plaintiff must show that the defendant's work is substantially similar to the plaintiff's protected expression." Beal v. Paramount Pictures Corp., 20 F.3d 454, 459 (11th Cir. 1994)(citing Original Appalachian Artworks,

Inc. v. Toy Loft, Inc., 684 F.2d 821, 829 (11th Cir. 1982)). Summary judgment is appropriate if either "the similarity between the works concerns only noncopyrightable elements, or if no reasonable jury upon proper instruction would find that the two works are substantially similar." Id.

In cases involving claims that a defendant copied the "selection and arrangement" of a copyrighted compilation, courts have explained that the copyright protection afforded to such compilations is "thin" and that in some cases a defendant may even copy the bulk of the material from the compilation without infringing. Feist, 499 U.S. at 349; BellSouth Adver. & Publ'g Corp. v. Donnelly Info. Publ'g, Inc., 999 F.2d 1436, 1445 (11th Cir. 1993). "The relevant inquiry is whether a substantial portion of the protectable material in the plaintiff's work was appropriated – not whether a substantial portion of defendant's work was derived from plaintiff's work." Worth v. Selchow & Righter Co., 827 F.2d 569, 570 n.1 (9th Cir. 1987).[7]

---

[7] Defendant has asked the Court to consider the Eleventh Circuit's holding that "virtual identicality," rather than "substantial similarity," may be required to show infringement of a compilation. See MiTek Holdings, Inc. v. Arce Eng'g Co., Inc., 89 F.3d 1548, 1558 (11th Cir. 1996). However, MiTek sets forth the standard "that should be used in analyzing claims of compilation copyright infringement of nonliteral elements of a computer program." Id. at 1558. In a later opinion, the Eleventh Circuit explicitly noted that MiTek's holding was limited to its facts and explained that the

9

### A. Selection

In its brief, Defendant argues, among other things, that summary judgment is appropriate because (a) Plaintiff's selection was not protectable, and (b) there is no "substantial similarity" between the selections.

Because Plaintiff's filings in this case are disorganized, it is difficult for the Court to determine whether Plaintiff intends to argue that Defendant copied her selection of allophones or that Defendant copied her selection of words and images (or both). However, Defendant is entitled to summary judgment regardless of which claim Plaintiff intended to bring before the Court.

First, if Plaintiff alleges that Defendant copied her selection of allophones, her claim is without merit, because she has failed to show that her selection was original or subject to copyright protection. A plaintiff cannot claim that she has a protectable right to the <u>concept</u> of using particular sounds, or allophones.[8] See <u>Mazer</u>, 347 U.S. at 217. This is particularly true where Plaintiff explains that the

---

"substantial similarity" standard remains "the default mode of analysis for compilation copyright claims." <u>BUC Int'l Corp. v. Int'l Yacht Council, Ltd.</u>, 489 F.3d 1129, 1149 n.42 (11th Cir. 2007). Accordingly, the "substantial similarity" standard is appropriate in this case.

[8] Plaintiff repeatedly used the word "concept" to describe what she alleges Defendant copied. (<u>See</u>, e.g., Pl.'s Suppl. Resp. at 5, 9, 13.)

twenty-one allophones she used represent <u>all</u> of the possible R allophones. Even if Plaintiff had "discovered" the twenty-one allophones, she could not possibly obtain a copyright that would prevent their use by others.

Second, if Plaintiff alleges that Defendant copied the selection of words and/or images depicted upon the cards, her claim is likewise without merit. As Defendant points out, it used fewer than eighteen percent of the words used by Plaintiff and used at least sixty-five words which did not appear in Plaintiff's decks. See <u>Worth</u>, 827 F.2d at 570 n.1. This falls well short of "substantial similarity" required to establish copyright infringement.

Additionally, Plaintiff is unable to demonstrate that her selection of words was original (and therefore protectable). Plaintiff herself chose 127 words which had previously appeared in Defendant's 1988 <u>Say and Do R</u> Worksheets, which Plaintiff reviewed prior to her publication of the EWR decks. And each of the eighty-three allegedly copied words and/or images had appeared in Defendant's products prior to Plaintiff's publication. For example, Defendant's <u>Awesome R Book</u> alone contained approximately seventy-five percent of the words that Plaintiff claims Defendant copied.[9] For these

---

[9] Furthermore, even if the Court had found that copying might have occurred, Plaintiff has failed to demonstrate

11

reasons, Plaintiff has failed to create an issue of material fact as to her claim that Defendant copied her "selection" of either allophones or word-image combinations.

**B. <u>Arrangement</u>**

Defendant contends that Plaintiff has provided no evidence that it copied Plaintiff's "phonetically consistent" arrangement of allophones. In response, Plaintiff asserts that the EWR decks comprised the first publication that "ever incorporated a completely phonetically consistent arrangement or compilation of phonemic /r/ words." Plaintiff argues that all prior publications used the "traditional approach," which she describes as being "focused on the spelling of the word and the placement of the /r/ in the word." She concedes that the traditional method does involve breaking the word positions down into initial, medial, and final positions. However, she contends that the traditional method lacked "phonetic consistency," which she claims she originated. (Pl.'s Ex. 19.)

Once again, Plaintiff is attempting to argue that her educational <u>ideas</u> are protected by copyright. They are not. Although the concept of arranging words in a "phonetically consistent" manner may be a useful educational innovation, a

---

"substantial similarity" between her "selection" and Defendant's.

12

concept is not protectable by copyright. See Mazer, 347 U.S. at 217. Defendant cannot be liable for simply arranging a non-infringing selection of words in a "phonetically consistent" manner. For these reasons, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's claim of copyright infringement.

### III. False Advertising and Unfair Competition Claims

With respect to her false advertising count, Plaintiff claims that "Defendants have held themselves out in their printed advertising publications and on their internet website as being the 'originators' of Plaintiff's protectable works." (Pl.'s Compl. at 6.) She further argues that Defendant used wording in its instructional materials and advertising that is "uncannily similar" to that used by Plaintiff. (Pl.'s Supplemental Br. at 20.)

This claim fails for several reasons. First, Plaintiff's assertion that Defendant held itself out as the originator of Plaintiff's work is entirely without evidence in support. Second, an assertion that Defendant's advertising is "similar" to Plaintiff's is not the proper subject for a false advertising claim. Finally, Plaintiff has failed to provide the Court, in any of her filings, with appropriate legal authority to support this claim. Plaintiff has failed to demonstrate a genuine issue of material fact on this claim,

therefore summary judgment is **GRANTED** as to the false advertising claim.

With respect to her unfair competition claim, the Court finds that Plaintiff has introduced no evidence in support of such a claim. Plaintiff cites an inapplicable state statute involving trademark as support for her unfair competition claim, and she fails include <u>any</u> discussion of this claim in her briefing. For these reasons, summary judgment is **GRANTED** as to the unfair competition claim.

## CONCLUSION

For the reasons explained above, summary judgment is **GRANTED** on all claims. The Clerk of Court is **DIRECTED** to **CLOSE** this case.

SO ORDERED this 27th day of February, 2008.

WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA